UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

SAM PALAZZOLA,

        Defendant.

_____/

Case No. 19-20235

SENIOR UNITED STATES DISTRICT
JUDGE ARTHUR J. TARNOW

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED [71]; DENYING DEFENDANT'S RENEWED MOTION TO SUPPRESS THE ORDER GRANTING TELECOMMUNICATIONS RECORDS AND THE INSTALLATION AND USE OF BOTH A PEN REGISTER WITH ENHANCED CALLER IDENTIFICATION AND A TRAP AND TRACE DEVICE [72]; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR DISCLOSURE OF BRADY EVIDENCE [44]; GRANTING THE UNITED STATES' MOTION TO CONTINUE THE TRIAL AND FIND EXCLUDABLE DELAY [73]**

    Defendant, Sam Palazzola, stands charged of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Originally, however, Sam Palazzola was charged in a criminal complaint for the production of methamphetamine. He was identified by several confidential informants, after a series of arrests were made as part of a 2015 DEA investigation into methamphetamine production in Warren, MI. He was arrested based on the testimony of these confidential informants.

    Palazzola's motions to suppress implicate the circumstances of his arrest. Both motions will be denied. The Court will also grant in part and deny in part his

motion for disclosure of evidence and grant the Government's motion to continue the trial and exclude delay.

## BACKGROUND

On October 4, 2018, FBI Special Agent William Fleming presented a criminal complaint to Magistrate Judge David R. Grand. Attached to the complaint was a 58-paragraph affidavit detailing the evidence that Fleming had gathered against Raymond Laturno and Sam Palazzola. Paragraphs 1-8 explain investigations into the Devil's Disciples Motorcycle Gang. (ECF No. 1, PageId.1-3). Paragraphs 9-22 explain investigations into a meth-cooking ring and conclude by stating that Laturno and Palazzola were participants in the ring. (ECF No. 1, PageId.4-6). Paragraphs 23-42 concern Raymond Laturno's participating in the ring. (ECF No. 1, PageId.6-9). Paragraphs 43-58 discuss the allegations made by three confidential informants that Palazzola was involved in the manufacturing of meth. (ECF No. 1, PageId.9-11).

That same day, October 4, 2018, Judge Grand signed the criminal complaint and found probable cause that Palazzola was engaged in the production of methamphetamine, in violation of 21 U.S.C. §§ 841 & 846. He issued a warrant for Palazzola's and Laturno's arrest.

On October 11, 2018, agents served the warrant on 6968 Lapeer Road, Clyde Township, MI. Laturno was present at the house, consented to a search of the house, and was taken into custody. Among the items inventoried was "paperwork." (ECF

No. 74-4). The paperwork is legal mail addressed to Palazzola and appears in the record with a post-it-note reading "10/11/18" search. (ECF No. 74-2).

That same day, October 11, 2018, after failing to find Palazzola at the Lapeer road address, Detective Matthew Willard of the Sterling Heights Police Department—a member of the FBI Macomb County Gang and Violent Crime Task Force—submitted an Affidavit and Application pursuant to 18 USC § 2703 for disclosure of telecommunication records and the installation and use of a Pen Register with Enhanced Caller Identification and a Trace and Trap device. His application noted the arrest warrant against Sam Palazzola and the fact that the target phone number was identified as his by an informant, and that the phone number was active and registered to Metro PCS under the name Joe Musue. (ECF No. 52-2). The application noted that the investigators would use a pen register and a trap and trace device to send out signals to the target phone to triangulate the phone's location. (ECF No. 52-3, PageId.249). The application was granted by Magistrate Judge Ryan Zemke of the 41B District Court in Clinton Township, MI, who noted that the warrant was issued pursuant to 18 USC § 2703, § 3123, § 3124, and § 3127. (ECF No. 52-4, PageId.259).

Upon returning to the 6968 Lapeer Road four days later, FBI agents saw that a light was on, entered the house, and executed the warrant on Palazzola. During the course of the arrest, the agents claimed that they saw, in plain view inside the

bedroom from which Palazzola emerged, four gallon-sized zip lock bags of marijuana and a needle with suspected methamphetamine. They also claim that Palazzola's girlfriend, Samantha Hazzard, confirmed his intent to sell the marijuana, confirmed that methamphetamine was in the needle, and stated that Palazzola was in possession of a handgun with a silver barrel and cherry wood handles. (ECF No.43-1, PageId.145-146). Based on these statements, and the plain-view observations, the officers swore an affidavit for a search warrant before Magistrate Judge Elizabeth A. Stafford. (ECF No. 43). Judge Stafford issued a search warrant, and, when the agents returned to execute that warrant, they found a .32 caliber revolver.

Palazzola's detention hearing was held before Magistrate Judge Stafford on October 17, 2018. (ECF No. 19). He was ordered detained, and, on April 17, 2019, a grand jury returned a one count indictment, charging the defendant with being a Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 34).

## PROCEDURAL BACKGROUND

On June 20 and June 21, 2019, Palazzola filed Motions to Suppress Evidence [43] and for Disclosure of *Brady* Material [44]. A hearing was held on the Motion to Suppress on July 17, 2019 and continued to September 24, 2019, at which time Defendant admitted that a critical witness would not testify on his behalf. The Court

denied the Motion to Suppress on the record and in a September 25, 2019 Order. (ECF No. 49). It did not reach the Motion for Disclosure of *Brady* Material [44].

On November 22, Defendant filed his first Motion to Suppress the Order Granting Telecommunications Records and the Installation and Use of Both a Pen Register with Enhanced Caller Identification and a Trap and Trace Device. (ECF No. 52). The Court held a hearing on January 22, 2020 and denied this motion on the record. The subsequent written order explained,

> [The Court] did not reach the question of whether the state court warrant was valid, however, because it found that the arresting agents had independent grounds to suspect that Mr. Palazzola could be found at his Clyde Township address — as demonstrated by their previous attempt to arrest him there.

(ECF No. 60, PageId.326).

On June 8, 2020, Palazzola filed a Motions to Suppress Evidence Seized [71] and a Renewed Motion to Suppress the Order Granting Telecommunications Records and the Installation and Use of Both a Pen Register with Enhanced Caller Identification and a Trap and Trace Device [72]. Two days later, on June 10, 2020, the Government moved for continuance of the jury trial and to find excludable delay. (ECF No. 73). On June 26, 2020, the Government responded to both of Defendant's motions. (ECF Nos. 74, 75). The Court held a hearing on July 14, 2020. Following the hearing, both parties filed supplemental briefing. (ECF Nos. 77, 78, 80).

Case 2:19-cr-20235-AJT-MKM   ECF No. 82   filed 08/04/20   PageID.630   Page 6 of 17

## ANALYSIS

**I.  Renewed Motion to Suppress the Order Granting Telecommunications Records and the Installation and Use of Both a Pen Register with Enhanced Caller identification and a Trap and Trace Device [72]**

On June 22, 2018, the Supreme Court held that cell-site location data—used to pinpoint a target's location by triangulating signals by cell tower—could not be accessed by law enforcement absent a warrant. *Carpenter v. United States*, 138 S. Ct. 2206 (2018). Defendant argues that his cell-site location, not the fact that he lived at the Lapeer road residence, led law enforcement to his door on October 15, 2018. He reasons that the October 11, 2018 warrant allowing law enforcement to obtain cell-site location was improperly obtained, because it was issued by a state, not a federal, judge, in violation of FED. R. CRIM PRO. 41(d)(1).

The Court declined reach the question of whether the October 11, 2018 warrant was valid at the January 22, 2020 hearing. It found that the officers used sources of information independent from the cells-site location data to arrest Palazzola. (ECF No. 64; PageId.341-345).

On February 20, 2020, the Government turned over Jencks material to the defense. Defendant did not find any material supporting the Government's contention that "source information from multiple sources" established that Palazzola was living at the Lapeer road residence. In response, the Government

produced three pieces of legal mail that were seized from 6968 Lapeer Road at the time of the October 11 arrest of Laturno.[1]

The question for the Court is whether the officers had reasonable belief that Palazzola was staying at 6968 Lapeer Road. "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). Whether the officers knew or believed that Palazzola was living at the Lapeer Road house is not relevant, however, for the Sixth Circuit has held that "it would be illogical to afford the defendant any greater protection in the home of a third party than he was entitled to in his own home." *United States v. Buckner*, 717 F.2d 297, 300 (6th Cir. 1983). The question is therefore whether the officers had "reasonable belief" that Palazzola could be found at the house when they entered it. "Reasonable belief is established by looking at common sense factors and evaluating the totality of the circumstances." *United States v. Pruitt*, 458 F.3d 477, 482 (6th Cir. 2006).

The officers in this case had multiple grounds to formulate a reasonable belief that Palazzola could be found at the Lapeer road residence at the time of his arrest.

---

[1] The parties also argue about the testimony of Samantha Hazzard. This is not relevant to the question of whether independent basis existed for probable cause that Palazzola could be found at 6968 Lapeer Road, because Hazzard did not give her statement until after Palazzola was arrested.

First, Laturno gave a post-arrest statement indicating that Palazzola had been staying at the house, but denying knowledge of his whereabouts. Second, a still-confidential informant advised law enforcement that Palazzola was living at the house. Third, the legal mail in Palazzola's name indicated that Palazzola lived there. This information was enough to give law enforcement reason to suspect that Palazzola was at least staying at 6968 Lapeer Road.

The circumstances of his arrest provide further evidence that at least someone was inside of the house when the officers entered. The lights were on, and the informant had advised law enforcement that activity had continued in the house even after Laturno's arrest. Considering the totality of the circumstances, the arrest warrant was properly served without ever needing to resort to the use of the trap and trace technology. There is no basis in the Jencks material or in Defendant's renewed motion to revisit the Court's holding "that the arresting agents had independent grounds to suspect that Mr. Palazzola could be found at his Clyde Township address — as demonstrated by their previous attempt to arrest him there." (ECF No. 60, PageId.326).

Out of an abundance of caution, however, the Court will consider the validity of the warrant issued for telecommunications records and the installation and use of the pen register and trap and trace device.

Defendant argues that Detective Willard's decision to go to a Michigan district court judge instead of a federal magistrate judge was forum-shopping and violated FED. R. CRIM PRO. 41(d)(1). Rule 41(b) provides,

> (b) VENUE FOR A WARRANT APPLICATION. At the request of a federal law enforcement officer or an attorney for the government:
>
> (1) a magistrate judge with authority in the district—or if none is reasonably available, a judge of a state court of record in the district—has authority to issue a warrant to search for and seize a person or property located within the district[.] *Id.*

This venue provision is counterbalanced by the qualification that, "[t]his rule does not modify any statute regulating search or seizure, or the issuance and execution of a search warrant in special circumstances." FED. R. CRIM PRO. 41(a)(1).

Because 18 U.S.C. § 2703(c)(1)(A) permits state courts to issue warrants, Rule 41 does not represent the exclusive mechanism by which § 2703(c) warrants can be issued. That statute, part of the Electronic Communications Privacy Act ("ECPA") of 1986, was designed to give law enforcement privileged access to stored wire or electronic communication data, while delimiting the boundaries of this privilege. Charles Doyle, Privacy, An Overview of the Electronic Communications Privacy Act, Congressional Research Service, October 9, 2012 https://fas.org/sgp/crs/misc/R41733.pdf. The statute provides as follows.

> (1) A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity—

> (A) obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures…) by a court of competent jurisdiction;

18 U.S.C. § 2703(c)(1)(A).

The statute continues by specifying that "[i]n the case of a State governmental authority, such a court order shall not issue if prohibited by the law of such State." 18 U.S.C. § 2703(d). Rule 41 outlines the requirements for a federal court to issue a search warrant; it does not purport to abridge a state court's authority to issue a warrant under § 2703(c)(1)A. The statute has a built-in jurisdictional provision that does not rely on Rule 41(b)'s procedures. *United States v. Ackies*, 918 F.3d 190, 202 (1st Cir.), *cert. denied*, 140 S. Ct. 662, 205 L. Ed. 2d 443 (2019); *United States v. Berkos*, 543 F.3d 392, 398 (7th Cir. 2008). Nor can Rule 41, by its own terms, abridge statutory grants of warrant authority elsewhere in the U.S. Code. *Id.*

Defendant further argues that Judge Zemke's order exceeded § 2703, which does not authorize the historic use of cell-site location data. To the extent the data was used at all for the purpose for which Defendant seeks exclusion, it was used to determine Palazzola's real-time location, to arrest him. Any use of historic cell-site data would not have helped the police find where to arrest Palazzola and would thus be outside the scope of this motion.

The search warrant also allowed for the installation of a pen register and a trap and trace device. Trap and trace devices identify the sources of incoming calls, and

pen registers identify the numbers called. Doyle, *supra* at 46. The Pen Registers and Trap and Trace Devices sections of the ECPA—which allow for the pinpointing of target cell signals—also allow for the use of state court warrants. 18 U.S.C. § 3122, § 3123.

Even if Defendant had proven the search warrant was illegal, he would still not be entitled to exclude the evidence produced by the search. Rule 41 violations only trigger the exclusionary rule when a defendant proves that the officers "violated a rule-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers." *United States v. Searp*, 586 F.2d 1117, 1124 (6th Cir. 1978). Defendant argues that Detective Willard's forum-shopping would trigger this threshold, but, even it did, the *Leon* good faith exception would still bar the use of the exclusionary rule unless the officer's conduct was such that "a reasonably trained police officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Leon*, 468 U.S. 897, 922 n. 23 (1984). Even if Defendant's interpretation of the interplay between the ECPA and Rule 41 were correct, a "reasonably trained officer" could not be expected to understand Rule 41 as reaching so broadly. The ECPA at least contemplates state courts issuing warrants for digital tracking, and Rule 41 at least contemplates giving ground to "a statute regulating search and seizure."

It is inexplicable that the officers applied for an invasive digital tracking warrant to find a fugitive who was simply staying at the house where they tried to arrest him the first time. Equally inexplicable is their decision to go to a state court magistrate judge when they had already obtained an arrest warrant from a federal magistrate judge. That being said, their conduct did not violate Rule 41 of the Federal Rules of Criminal Procedure. Even if it had, the *Leon* Good Faith exception would apply.

## II.    Motion to Suppress Evidence Seized [71]

Defendant argues that the arrest warrant sworn before Judge Grand was deficient, because the reliability of the confidential informants is not established. He asks that the gun seized from the subsequent search warrant of the house to be excluded as fruit of the poisonous tree.

The affidavit attached to the criminal complaint alleged the following facts. CW5 and CW3 advised the affiant that Palazzola was cooking meth. (ECF No. 71-2, ¶ 46.) Affiant stated that CW5 and CW were cooperating under a proffer agreement and that his or her information has been corroborated by other sources. (*Id*. at ¶ 47, ¶ 42). CS1, according to affiant, stated that Palazzola began cooking meth after his 2012 release from prison, and was taught according to the "shake-and-bake" method. CS1 and Palazzola would purchase ingredients together, and CS1 vouched that Palazzola cooked meth at various locations in Macomb and St. Clair

County, including his father's house, Bando's house, a certain trailer, and various hotels. A review of NPLEX records—which keep track of who purchases pseudoephedrine cold medicine "PCM")—confirmed that CS1 and Palazzola purchased PCM at the same time. (*Id*. at ¶¶49-54). NPLEX also revealed that Palazzola had been blocked for purchasing more than his allowed quantity of PCM at least ten times in 2014-2015. (*Id*. at ¶ 55). The affidavit ends with a description of Palazzola's lengthy criminal history. (*Id*. at ¶¶ 56-57).

The Supreme Court has held that a tipster's information, when used in a warrant affidavit, must bear sufficient indicia of reliability to be credible.

> Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued.

*Illinois v. Gates*, 462 U.S. 213, 239 (1983).

The *Gates* test was met by this arrest warrant. Though the statements by CW3 and CW5 may be considered rather boilerplate and conclusory, the statements by CS1 are precise, detailed, and externally verified by the NPLEX database.

### III.   Motion for *Brady* Disclosure [44]

Defendant seeks impeachment information relating to informants CW1 and CW5. He believes that these informants made false testimony under government inducement, and seeks the following: a) *Kastigar* letters or immunity agreements

provided to them, b) letters of immunity or non-prosecution, c) pretrial diversion offers and/or agreements, d) Rule 11 plea agreements, e) records of any payments made to sources, f) prior conviction records regarding sources, g) 302s of the CWs' statements, h) evidence of the 2014/2015 PCM purchases, and i) the agents' personnel files, including performance evaluations, disciplinary write-ups, and internal affairs investigations.

The Supreme Court has made clear that there is no distinction between exculpatory evidence and impeachment evidence for *Brady* purposes. *Schledwitz v. United States*, 169 F.3d 1003, 1015 (6th Cir. 1999). Nevertheless, the Government argues that The Jencks Act, at 18 U.S.C. § 3500 should limit the requirements of Brady Disclosure. *See United States v. Presser*, 844 F.2d 1275 (6th Cir. 1988) (holding that, despite *Brady*, the Government need only provide impeachment evidence at trial, in accordance with the Jencks Act).

The Sixth Circuit in *United States v. Shanklin*, 924 F.3d 905 (2019) drew a more nuanced picture of disclosure and observed that a district court has discretion to compel disclosure of an informant's identity when such is necessary for the fair administration of justice. *Id*. at 913. Critically, however, "mere conjecture of supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure. *United States v. Sharp*, 778 F.3d 1182, 1187 (6th Cir. 1985). The burden is on the defendant to show "how disclosure of the informant would

substantively assist in his defense." *United States v. Sierra-Villegas*, 774 F.3d 1093, 1099 (6th Cir. 2004).

Palazzola provides no information how disclosure would assist his defense. He has not been charged with any drug crimes to date, and the CWs testified only as to his methamphetamine production, not his gun possession. Their identities would therefore have no exculpatory value.

Neither is Defendant automatically entitled to the investigating officers' personnel and disciplinary files under *Brady*. "[The] *Brady* rule is not an evidentiary rule which grants broad discovery powers to a defendant and that '[t]here is no general constitutional right to discovery in a criminal case." *United States v. Todd,* 920 F.2d 399, 405 (6th Cir.1990). The Sixth Circuit has held that absent some support for a defendant's contention that officers' personnel files will contain exculpatory information, the Government cannot be compelled to produce those files. *United States v. Driscoll*, 970 F.2d 1472, 1482 (1992). Quoting *Presser*, the *Driscoll* court noted, "The Court also has made it clear that while the *Brady* rule imposes a general obligation upon the government to disclose evidence that is favorable to the accused and material to guilt or punishment, the government typically is the sole judge of what evidence in its possession is subject to disclosure." *Id*. (quoting *Presser*, 844 F.2d at 1281). As with the CWs, this calculus may change if Palazzola is charged with conspiracy to produce methamphetamines.

Palazzola's motion for disclosure of Brady material will be denied, except for the NPLEX data. The Government agreed at the hearing to produce that evidence.

### IV. Motion to Continue the Jury Trial and Find Excludable Delay [73]

For the reasons stated on the record, the Court finds that the ends of justice are served by continuing the jury trial and excluding time in advance of trial under the Speedy Trial Act. The Chief Judge of this district has found that "the ends of justice served by ordering the postponements outweigh the best interest of the public and any defendant's right to a speedy trial, pursuant to 18 U.S.C. § 3161(h)(7)(A)." Administrative Order 20-A0-039, July 21, 2020.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Suppress Evidence Seized [71] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Renewed Motion to Suppress the Order Granting Telecommunications Records and the Installation and Use of Both a Pen Register with Enhanced Caller identification and a Trap and Trace Device [72] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Disclosure of Brady Evidence [44] is **GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Continue the Jury Trial and Find Excludable Delay [73] is **GRANTED**.

**SO ORDERED**.

Dated: August 4, 2020

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge